NOWELL v. KILLENS

[119 N.C. App. 567 (1995)]

MICHAEL TAYLOR NOWELL, JR., Petitioner v. ALEXANDER KILLENS, Commissioner
of the N.C. DIVISION OF MOTOR VEHICLES, Respondent

No. COA94-1193

(Filed 18 July 1995)

## Automobiles and Other Vehicles § 93 (NCI4th)— willful refusal to take breathalyzer test—sufficiency of evidence—possibility of losing limited driving privilege— instruction not required

Evidence was sufficient to support a finding that petitioner was informed of his statutory rights with regard to a breathalyzer test, and the trial court did not err in concluding that petitioner had willfully refused to submit to the chemical analysis of his breath. The court declines to impose the additional requirement that persons being requested to submit to chemical analysis should be informed that a refusal can result in the denial of their right to seek a limited driving privilege.

**Am Jur 2d, Automobiles and Highway Traffic § 130.**

**Suspension or revocation of driver's license for refusal to take sobriety test. 88 ALR2d 1064.**

Appeal by petitioner from judgment entered 29 July 1994 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 5 June 1995.

On 27 August 1993 at approximately 10:35 p.m., Trooper R. K. Rawlings of the North Carolina Highway Patrol arrested petitioner for driving while impaired. Trooper Rawlings transported petitioner to the Wake County Public Safety Center for a chemical analysis of petitioner's breath to determine the alcohol concentration in his body. Upon petitioner's arrival at the Public Safety Center, Philip F. Nicholas, a qualified chemical analyst, handed petitioner a form entitled "Rights of person requested to submit to a chemical analysis to determine alcohol concentration under G.S. 20-16.2(a)." Mr. Nicholas read the form's contents to petitioner verbatim. Afterwards, Mr. Nicholas signed the form at 11:04 p.m., but petitioner refused to sign it.

At 11:22 p.m., Trooper Rawlings requested that petitioner submit to a chemical analysis of his breath. Petitioner refused and stated that he wanted a blood test. Mr. Nicholas informed petitioner that it was

Trooper Rawlings' right, not petitioner's, to choose which test was to be administered. Despite being advised numerous times by Mr. Nicholas of the consequences of refusing the breathalyzer test, petitioner continued to request a blood test. At 11:23 p.m., Mr. Nicholas reported petitioner as having refused the breathalyzer test.

As a result of petitioner's refusal to submit to the test, respondent revoked petitioner's motor vehicle operator's license effective 28 November 1993. Petitioner appealed the revocation to superior court pursuant to N.C. Gen. Stat. § 20-25 (1993). When the matter was heard on 13 July 1994, petitioner stipulated that there was probable cause for his arrest on an implied-consent offense. After making findings of fact consistent with the foregoing evidence presented at the hearing, the trial court concluded that:

1. Petitioner was arrested for an implied consent offense based upon reasonable grounds.

2. The petitioner was notified of his rights by a qualified chemical analyst pursuant to G.S. 20-16.2(a).

3. Petitioner willfully refused to submit to a chemical analysis upon the request of the charging officer.

The trial court then entered its judgment affirming respondent's revocation of petitioner's motor vehicle operator's license on 29 July 1994. From the trial court's judgment, petitioner appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Bryan E. Beatty, for the State.*

*John T. Hall for petitioner.*

McGEE, Judge.

Petitioner contends that the trial court erred in denying his petition to reverse the revocation of his motor vehicle operator's license by the North Carolina Division of Motor Vehicles. The revocation resulted from his refusal to submit to a chemical analysis of his breath. He asserts that his refusal to submit to the test was not "willful" because he was not informed that he would be denied a limited driving privilege for failure to submit to the test. We are not persuaded, and accordingly affirm the trial court's judgment.

Upon revocation of a petitioner's driving privileges and an appeal *de novo* to superior court, the trial court's review is limited to a determination of whether:

(1) The person was charged with an implied-consent offense;

(2) The charging officer had reasonable grounds to believe that the person had committed an implied-consent offense;

(3) The implied-consent offense charged involved death or critical injury to another person, if this allegation is in the affidavit;

(4) The person was notified of his rights as required by subsection (a); and

(5) The person willfully refused to submit to a chemical analysis upon the request of the charging officer.

N.C. Gen. Stat. § 20-16.2(d) (1993). If the trial court's findings of fact are supported by the evidence, they are conclusive on appeal. *Henderson County v. Osteen*, 297 N.C. 113, 254 S.E.2d 160 (1979).

In the present case, the first two conditions are satisfied by petitioner's stipulation that there was probable cause for his arrest on an implied-consent offense. The third condition is not relevant to this case, so the only issues to be determined by the trial court were whether petitioner was notified of his rights as required by N.C. Gen. Stat. § 20-16.2(a) (1993), and whether he willfully refused to take the test. Under N.C. Gen. Stat. § 20-16.2(a), a person must be given written and oral notification that:

(1) He has a right to refuse to be tested.

(2) Refusal to take any required test or tests will result in an immediate revocation of his driving privilege for at least 10 days and an additional 12-month revocation by the Division of Motor Vehicles.

(3) The test results, or the fact of his refusal, will be admissible in evidence at trial on the offense charged.

(4) His driving privilege will be revoked immediately for at least 10 days if:

    a. The test reveals an alcohol concentration of 0.08 or more; or

    b. He was driving a commercial motor vehicle and the test reveals an alcohol concentration of 0.04 or more.

(5) He may have a qualified person of his own choosing administer a chemical test or tests in addition to any test administered at the direction of the charging officer.

(6) He has the right to call an attorney and select a witness to view for him the testing procedures, but the testing may not be delayed for these purposes longer than 30 minutes from the time he is notified of his rights.

The evidence in the record tends to show that petitioner was notified of his rights at 11:04 p.m., and that he did not ask to contact an attorney or to have a witness present to view the testing procedure. When petitioner was asked at 11:22 p.m. to submit to the chemical analysis of his breath, he stated he would not submit to a breathalyzer test. Petitioner did not attempt to submit to the chemical analysis of his breath. Mr. Nicholas determined that petitioner had willfully refused to take the test and reported the refusal occurred at 11:23 p.m. The evidence clearly supports the trial court's finding that petitioner received proper notification of his rights under N.C. Gen. Stat. § 20-16.2(a).

As for the final condition, this Court has held that a:

willful refusal occurs when a petitioner is aware that he must make a choice of whether or not to take the test, aware of the 30-minute time limit to make a decision, voluntarily decides not to take the test, and knowingly allows the time limit to expire before he elects to take the test.

*Rock v. Hiatt*, 103 N.C. App. 578, 581, 406 S.E.2d 638, 640 (1991). The trial court found that petitioner had been notified of his rights under N.C. Gen. Stat. § 20-16.2(a) that he had a right to refuse the test and could delay the test up to thirty minutes after calling an attorney or selecting a witness to view the testing procedure. Petitioner did not contact an attorney nor a witness. He refused to submit to the chemical analysis of his breath to determine the alcohol concentration, but continued to state that he wanted a blood test. When it is obvious that a petitioner does not intend to exercise his right to contact an attorney or witness, the examiners may find a "willful refusal" prior to the expiration of the 30-minute time period. *Id.* at 583, 406 S.E.2d at 642.

Petitioner seeks to have this Court impose by judicial decision the additional requirement that persons being requested to submit to chemical analysis should be informed that a refusal can result in the denial of their right to seek a limited driving privilege. We decline to impose this additional requirement in excess of the statutory provisions of N.C. Gen. Stat. § 20-16.2(a). Petitioner was informed of his statutory rights, and the trial court did not err in concluding that peti-

tioner had willfully refused to submit to the chemical analysis of his breath. We therefore affirm the trial court's judgment.

Affirmed.

Judges EAGLES and JOHN concur.