MONA W. JONES v. ELGIN JEFFERSON AND MELINDA JEFFERSON, D/B/A JEFFERSON FAMILY CARE HOME #3

NORMA BIGELOW IRELAND v. ELGIN JEFFERSON AND MELINDA JEFFERSON, D/B/A JEFFERSON FAMILY CARE HOME #2

GLADYS B. TOTTEN v. ELGIN JEFFERSON AND MELINDA JEFFERSON, D/B/A JEFFERSON FAMILY CARE HOME #3

No. 8817DC70

(Filed 20 September 1988)

1. **Master and Servant § 8.1— violations of FLSA alleged—findings as to compensation and intent of employer and employees**

   In an action to recover for alleged minimum wage and overtime violations of the federal Fair Labor Standards Act, the trial court's findings that the salaries and other remuneration paid to the plaintiffs were intended by the defendants to compensate plaintiffs for the first forty hours worked each week were supported by the evidence insofar as those findings related to the periods during which the plaintiffs were employed to work 24-hour shifts, and such findings were not precluded by a stipulation of the parties in their pretrial order that, "The plaintiffs received paychecks on a monthly basis while employed with the defendants, which said checks were to be compensation for all hours worked"; however, the trial judge's findings that the smaller salaries paid to two plaintiffs for working 12-hour shifts were also intended to compensate for forty hours of work per week were unreasonable and unsupported by the evidence.

2. **Master and Servant § 10— violations of FLSA alleged—dates of employment—stipulation waived by employer**

   In an action to recover for alleged minimum wage and overtime violations of the federal Fair Labor Standards Act, defendant employers waived their right to rely on a stipulation regarding dates of employment where ample evidence supporting the trial court's challenged findings was offered at trial by both plaintiffs and defendants, and the evidence was received without any objection by defendants.

3. **Master and Servant § 8.1— alleged violations of FLSA—supervisors in group care facilities for the elderly—employees working 24 hours per day—sufficiency of evidence**

   In an action to recover for alleged minimum wage and overtime violations of the federal Fair Labor Standards Act, evidence was sufficient to support the trial judge's finding that plaintiffs, who were live-in supervisors in defendants' residential group care facilities for elderly people, worked 24 hours per day when employed full time where that finding was based in turn upon other findings by the court that, while on duty, plaintiffs were not allowed to leave the premises; their presence on the premises at all times was for defendants'

Jones v. Jefferson and Ireland v. Jefferson and Totten v. Jefferson

benefit; their sleep was frequently interrupted by the necessity of attending to residents; and they had to pay substitutes from their own resources when they took time off other than their regular allotted time.

**4. Master and Servant § 8.1— alleged violations of FLSA—calculation of back wages—consideration of lodging provided by employer**

In an action to recover for alleged minimum wage and overtime violations of the federal Fair Labor Standards Act, the trial court erred in its calculations of back wages liability by inconsistently granting credit to defendant employers for lodging provided to one plaintiff but refusing them credit for lodging provided to two other plaintiffs based on its finding that the lodging was "not suitable and adequate" and "not comparable" to plaintiffs' own homes, since the condition of the lodging provided may have been relevant to its value, but the evidence here did not support a finding that the lodging was of no value; there is no requirement that the lodging provided must be comparable to the employee's own home or that there must be an express agreement between employer and employee in order to include the value of lodging in an employee's wages; and the critical issue is whether the benefit is provided primarily for the benefit of the employee.

**5. Master and Servant § 8.1— alleged violations of FLSA—insufficiency of good faith belief defense—award of both liquidated damages and prejudgment interest improper**

Although defendant employers presented some evidence tending to show that their violation of the Fair Labor Standards Act was in good faith, the trial court found that they had not satisfactorily established a good faith and reasonable belief defense, and it was within the sound discretion of the trial court to award liquidated damages; however, the court could not award both liquidated damages and prejudgment interest.

**6. Master and Servant § 8.1— alleged violation of FLSA—test of willfulness—insufficiency of showing—extension of period of limitations improper**

The appropriate test for determining whether a violation of the Fair Labor Standards Act is willful is not whether the employer is aware of the possible applicability of the Act but whether the employer knew or showed a reckless disregard for the matter of whether its conduct was prohibited by statute; therefore, in the absence of such evidence of knowledge or reckless disregard in this case, the trial court erred in finding willfulness and in extending the period of limitations to three years based on that finding.

APPEAL by defendants from *Peter M. McHugh, Judge.* Judgments entered out of session and out of county with consent of all parties on 10 February 1987. Heard in the Court of Appeals 1 June 1988.

*Donaldson, Horsley & Greene, P.A., by Arthur J. Donaldson, for plaintiff-appellees.*

*Fisher & Phillips, Atlanta, Georgia, by Henry A. Huettner; and Farmer & Watlington, by R. Lee Farmer, for defendant-appellants.*

BECTON, Judge.

This appeal arises under the federal Fair Labor Standards Act (FLSA), 29 U.S.C. Sec. 201 *et seq.* Five employees of defendants Elgin and Melinda Jefferson, operators of Jefferson Family Care Homes, brought separate actions against their employers for alleged minimum wage and overtime violations of the FLSA. The cases were consolidated for a bench trial, and judgments from which no appeal has been taken were entered against two of the plaintiffs. The other plaintiffs, Mona W. Jones, Norma Bigelow Ireland, and Gladys B. Totten, were awarded back wages, liquidated damages, prejudgment interest, costs, and attorney fees. From those judgments, the Jeffersons appeal.

The Jeffersons assign error to several findings and conclusions of the trial court relating to the computation of unpaid minimum and overtime wages. They also contest the awards of liquidated damages, prejudgment interest, and attorney fees, as well as the trial court's application of the three-year, rather than two-year, statute of limitations for back wages liability. For the reasons that follow, we vacate the judgments and remand the matter to the trial court for further proceedings.

I

Elgin and Melinda Jefferson operate three licensed "family care homes," which are residential group care facilities for two to five (now six) elderly persons who require some personal services but no continuous medical supervision. Regulations promulgated by the North Carolina Department of Human Resources governing the operation of family care homes require that either the administrator or a "supervisor-in-charge" live in each home full time and be in charge of the home's operation. The regulations also require that responsible staff be on duty at all times to supervise and assist residents with activities such as bathing, dressing, walking, and to evacuate all residents in an emergency.

Norma Bigelow Ireland testified that she was employed as a live-in supervisor-in-charge at Jefferson Family Care Home #2 from 5 December 1979 to 5 June 1983. Pursuant to an oral agreement with Melinda Jefferson, she was on duty 24 hours a day, seven days a week, with five days off per month and received a monthly salary of $500 plus room and board. After about a year and a half her salary was raised to $650 per month, and a year later to $750 per month.

Mona W. Jones was employed to work twelve-hour shifts at Jefferson Family Care Home #3 from 23 March to 31 August 1983 for $400 per month, and during that time she had one paid week off. From 1 September 1983 to 24 March 1984, Jones resided on the premises pursuant to an oral contract requiring her to be on duty 24 hours per day with five days off each month, at a monthly salary of $800.

Gladys Totten also worked at Home #3 pursuant to an oral agreement. From 21 December 1982 to 12 March 1983, she resided on the premises, was on duty 24 hours per day, was entitled to three days off per month, and received a monthly salary of $750. From 21 March to 5 May 1983, she worked twelve-hour shifts from 7:00 a.m. to 7:00 p.m. at a salary of $400 per month.

The duties of employment for each plaintiff were substantially the same and, during a twenty-four hour period, included preparing and serving three meals, dispensing medication, helping the residents to bathe and dress, changing linens, doing the residents' laundry, and cleaning the premises. Plaintiffs were not free to leave the premises while on duty. When they took time off in addition to their allotted time, they personally paid substitutes to relieve them.

Personal calendars of the plaintiffs showing the days they worked or paid substitutes were received in evidence. Testimony by each plaintiff describing a typical day's work indicated that work duties occupied almost all waking hours and allowed only brief periods for personal pursuits or relaxation. The court also heard evidence regarding the normal hours of sleep of each plaintiff and indicating that sleep-time was regularly interrupted by the necessity of attending to residents on an average of once per night, or one to two times per night, four or five nights per week.

The Jeffersons presented testimony that each plaintiff was required by her oral contract to work only five days a week and no more than 20 days per month. When the plaintiffs were hired, they also were told variously that their job duties would require from 6 to 7.5 hours of work per day, that the remainder of their on-duty time they were free to engage in personal activities, and that they could leave the premises anytime by calling the Jeffersons to come and relieve them. In addition, the Jeffersons presented documentary evidence, including calendar records which purported to show the days and hours worked and reported by each employee at the end of each month, and which generally reflected workweeks of fewer than forty hours. Plaintiffs, however, denied having reported their time worked to their employer.

After hearing the evidence, the trial court found that the monthly salaries paid to the plaintiffs were intended by the parties as payment for the first forty hours of work each week; that meals provided to all plaintiffs and lodging provided to Ireland constituted additional compensation; and that plaintiffs worked 24 hours per day when employed full time and 12 hours per day when employed for 12-hour shifts. Based on these and other findings, the court concluded that the Jeffersons had committed minimum wage and overtime violations and awarded back wages to Ireland, Jones, and Totten of $84,686.08, $28,216.80, and $10,412.44, respectively. The court also awarded liquidated damages in like amounts and awarded $7,378.33 in costs and attorney fees to each plaintiff.

II

In their first four arguments, the Jeffersons allege various errors by the trial court relating to its computations of back wages owed to the plaintiffs. We will address them in order.

A

[1] The Jeffersons first challenge the trial court's findings with respect to each plaintiff that the salaries and other remuneration paid to the plaintiffs were intended by the defendants to, and did in fact, compensate the plaintiffs for the first forty hours worked each week. Specifically, they argue that this finding is unsupported by the record and is precluded by a stipulation of the par-

ties in their pretrial order that: "The plaintiffs received paychecks on a monthly basis while employed with the defendants, which said checks were to be compensation for all hours worked."

Under the FLSA, an employer is required to pay his employees who are "engaged in commerce" a minimum hourly wage of $3.35, 29 U.S.C. Sec. 206(a)(1), and must compensate them for time worked in excess of forty hours per week, *i.e.*, "overtime," at one and a half times their regular rate of pay. 29 U.S.C. Sec. 207(a)(1). The regular hourly rate of pay for a salaried employee is "computed by dividing the salary by the number of hours which the salary *is intended to compensate*." 29 C.F.R. Sec. 778.113(a) (1987). (Emphasis supplied.) In accordance with his finding that the remuneration paid to the plaintiffs was intended to compensate them for forty hours per week, the trial judge calculated the regular hourly rate by reducing the various monthly salaries to their weekly equivalents, *see* 29 C.F.R. Sec. 778.113(b); adding in the values of meals and lodging, in accordance with 29 C.F.R. Sec. 778.116; and dividing by forty. The result was then multiplied by one and a half to arrive at the appropriate overtime pay rate. In some instances, the computation of the regular rate produced a figure lower than minimum wage so that the court then awarded the difference necessary to bring the rate to minimum wage for those weeks and computed overtime at one and a half times the minimum wage.

The Jeffersons contend their stipulation means that the monthly salaries represented "straight-time" compensation for all hours worked by plaintiffs, however many or few. Then, relying on 29 C.F.R. Sec. 778.114, a rule governing employees who receive a fixed salary for fluctuating hours, they maintain that the trial court should have computed overtime at one-half the rate produced by dividing the salaries by all hours actually worked in a given workweek. Plaintiffs, on the other hand, argue that the stipulation simply means they were paid by the month rather than some other time period.

In construing a stipulation, a court should not extend its terms beyond that which fair construction justifies. *Noble v. Noble*, 18 N.C. App. 111, 196 S.E. 2d 62 (1973).

. . . Stipulations will receive a reasonable construction so as to effect the intentions of the parties, but in ascertaining the intentions of the parties, the language employed in the agreement will not be construed in such a manner that a fact which is obviously intended to be controverted is admitted or that a right which is plainly not intended to be waived is relinquished.

*Outer Banks Contractors, Inc. v. Forbes,* 302 N.C. 599, 604-605, 276 S.E. 2d 375, 380 (1981). In doubtful cases, appellate courts strongly incline toward the construction adopted by the trial court. 73 Am. Jur. 2d *Stipulations* Sec. 7 (1974).

In our view, the stipulation in question may not be fairly construed to amount to an agreement by the parties to be governed by the "fluctuating hours" provisions of 29 C.F.R. Sec. 778.114. It appears from the record that the method of determining the regular rate of pay for purposes of computing overtime is a matter which was intended to be controverted at trial. Moreover, it also appears that, throughout the trial, the parties disagreed about the intended meaning of the stipulation. The trial judge apparently adopted the plaintiffs' narrower interpretation, and we cannot say, based on the record before us, that that decision was clearly erroneous.

The question for our resolution thus becomes whether the court's "forty-hour" findings are supported by any competent evidence in the record. If so, the findings are conclusive on appeal. *See, e.g., Henderson County v. Osteen,* 297 N.C. 113, 254 S.E. 2d 160 (1979).

Melinda Jefferson testified at trial and in her deposition that the plaintiffs were told the job could require approximately six to seven hours of work per day, that they were never expected to put in over 35 to 40 hours per week, and that they were entitled to additional pay if they had to get up at night to attend to a resident. In addition, her deposition testimony included a concession to the effect that an additional payment at time and a half would have been required for time worked beyond forty hours in a week. In our view, this evidence is adequate to support the trial judge's finding that the salaries constituted wages for a work-week of forty hours, at least insofar as that ruling relates to the periods during which the plaintiffs were employed to work

24-hour shifts. However, Mrs. Jefferson's testimony seems to relate solely to the amount of work required during a 24-hour period. Under these circumstances, we find unreasonable and unsupported by the evidence the judge's findings that the smaller salaries paid to plaintiffs Jones and Totten for working 12-hour shifts were also intended to compensate for forty hours of work per week. We therefore remand the matter with instructions to the trial court to hear further evidence concerning the amount of time intended to be compensated by the salaries paid, to revise its findings as necessary, and to recalculate the regular hourly rate, the unpaid overtime, and the unpaid minimum wages, if any, due to the plaintiffs.

B

[2] The Jeffersons next contend that the trial court erred in its findings of fact regarding the dates of employment of plaintiffs Jones and Totten because these findings do not comport with dates of employment to which the parties stipulated in their pretrial order. Stipulations are binding judicial admissions which dispense with and substitute for the necessity of legal proof and which ordinarily remain in effect through the duration of the controversy. *In re Johnson*, 70 N.C. App. 383, 320 S.E. 2d 301 (1984). However, in this case, ample evidence supporting the court's challenged findings was offered at trial by both the plaintiffs and the Jeffersons and was received without any objection by the Jeffersons. Consequently, we conclude that the Jeffersons, by failing to object or to assert the stipulation, have waived their right to rely on the stipulated employment dates. *See, e.g., Hamco Oil and Drilling Co. v. Ervin*, 354 P. 2d 442 (Okla. 1960); 73 Am. Jur. 2d, *Stipulations* Sec. 12 (1974). This assignment of error is overruled.

C

[3] By their next argument, the Jeffersons challenge the trial judge's finding that the plaintiffs worked 24 hours per day when employed full time. That finding was based, in turn, upon other findings by the court that, while on duty, the plaintiffs were not allowed to leave the premises; that their presence on the premises at all times was for the defendants' benefit; that their sleep was frequently interrupted; that they had to pay substitutes from their own resources when they took time off other than their

regular allotted time; and that the defendants acquiesced in and countenanced this procedure.

The Jeffersons contend the "24-hour" finding is not supported by the evidence and urge this Court alternatively to find the existence of an express or implied agreement for six to seven hours of work each day, to make an independent determination of the compensable hours of work, or to simply overturn the finding and remand to the trial court for a new determination of the hours worked. We decline to adopt any of these alternatives.

It is not the role of this Court to weigh the evidence and substitute our own findings for those of the trial court. Although the question of the *sufficiency* of the evidence to support the findings may be raised on appeal, the trial court's findings of fact are conclusive and binding on appeal if supported by competent evidence, even though the evidence might sustain findings to the contrary. *E.g., In re Montgomery*, 311 N.C. 101, 316 S.E. 2d 246 (1984).

The standard for proving compensable hours worked, in actions under the FLSA, was enunciated by the United States Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 90 L.Ed. 1515 (1946). Under *Anderson*, an employee sustains his burden of proof ". . . if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687, 90 L.Ed. at 1523. The burden then shifts to the employer to produce "evidence of the precise amount of work performed or . . . evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88, 90 L.Ed. at 1523. Absent such evidence, "the court may then award damages to the employee even though the result be only approximate . . . ." *Id.* at 688, 90 L.Ed. at 1523.

Pointing to evidence that the plaintiffs slept, ate meals, and engaged in a few other personal pursuits, the Jeffersons contend the finding that the plaintiffs worked 24 hours a day for days or weeks at a time is unreasonable. They rely for support upon 29 C.F.R. Sec. 785.23 which states:

>     An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not con-

sidered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own . . . .

However, the trial court found facts in accordance with evidence presented by the plaintiffs tending to show that they did not in fact enjoy periods of complete freedom from all duties or freedom to leave the premises and, thus, did not fall within the circumstances contemplated by this regulation. Moreover, it is well-established that idle time such as time spent in eating, sleeping, or other personal activities may constitute compensable work time, if it is spent predominantly for the employer's benefit, and that whether the time primarily benefits the employer or the employee is a factual question dependent upon all of the circumstances of the case. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 89 L.Ed. 124 (1944); *Armour & Co. v. Wantock*, 323 U.S. 126, 89 L.Ed. 118 (1944). This Court specifically held, in *Lowe v. Bell House, Inc.*, 74 N.C. App. 196, 328 S.E. 2d 301 (1985), that sleep time which was interrupted by a call to duty on an average of two or three times a week for between one-half hour and one hour, constituted compensable work time because the frequency of interruptions established the night hours on call were "spent predominantly for the employer's benefit."

The trial judge resolved the key factual question in this case by concluding that all plaintiffs' on-duty time was spent primarily for their employer's benefit. We are satisfied the plaintiffs have carried their burden of proof by presenting documentary and testimonial evidence estimating their average working schedule from which the trial judge was able to reasonably approximate the hours worked and by demonstrating that, due to the frequency with which their sleep was interrupted, even their sleep time was spent predominantly for their employer's benefit. The rebuttal evidence offered by the defendant was not found to be credible by the trial court, and we are not persuaded by their arguments on appeal that the inferences drawn by the Court from the plaintiffs' evidence are clearly erroneous. The Jeffersons' challenges to the court's computation of compensable hours are overruled.

## D

[4] The Jeffersons further contend that the trial court erred in its calculations of back wages liability by inconsistently granting credit to them for lodging provided to plaintiff Ireland but refusing them credit for lodging provided to Jones and Totten. We agree.

Section 203(m) of the FLSA allows a credit to an employer for "the reasonable cost . . . of furnishing [an] employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees . . . ." In this case, while crediting the Jeffersons for meals provided to all plaintiffs, the trial judge denied credit for lodging supplied to Jones and Totten based on findings that their sleeping quarters were "not suitable and adequate" and "not comparable" to their own homes, and that no agreement existed between them and the defendants that lodging would be considered additional salary.

The evidence shows that each of the plaintiffs, while residing on the premises full time, was provided a furnished upstairs bedroom for her use, although each also maintained another residence elsewhere. Although there is evidence that the room provided at Home #3 and occupied successively by Totten and Jones was initially poorly furnished and unattractive, the Jeffersons later made improvements to the room, and it was in fact used by the plaintiffs and their families. In our opinion, while the condition of the lodging provided may be relevant to its value, the evidence in this case does not support a finding that the lodging was of no value. Moreover, we find no authority for the proposition that the lodging provided must be comparable to the employee's own home or that there must be an express agreement between employer and employee in order to include the value of lodging in an employee's wages. Rather, the critical issue is whether the benefit is provided primarily for the benefit of the employee. *See Laffey v. Northwest Airlines, Inc.*, 642 F. 2d 578 (D.C. Cir. 1980). Because we detect no reasonable basis for the trial court's decision not to count as wages the reasonable costs of lodging provided to Jones and Totten while they resided on the premises full time, we direct the trial court, in recalculating back wages liability on remand, to include such costs in the computation of their wages.

### III

**[5]** We now turn to the Jeffersons' contention that the trial court erred by awarding the plaintiffs liquidated damages and prejudgment interest.

Section 216(b) of the FLSA imposes upon an employer who violates the Act liquidated damages in an amount equal to the liability for unpaid minimum wages or overtime. However, 29 U.S.C. Sec. 260 further provides that:

> if the employer shows *to the satisfaction of the court* that the act or omission giving rise to [the] action [for unpaid wages] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation . . . the court may, *in its sound discretion,* award no liquidated damages . . . . (Emphasis supplied.)

Although the Jeffersons presented some evidence tending to show that their violation of the FLSA was in good faith (including evidence they believed from having performed the job themselves that it required no more than six to seven hours of work per day, that they were unaware of the long hours being worked, and that the plaintiffs never demanded any overtime pay until the lawsuits were filed), the trial court found that the Jeffersons had not satisfactorily established a good faith and reasonable belief defense. As an appellate court, we may not reassess the credibility of the evidence. Moreover, even when the evidence does support a good faith defense, it remains within the sound discretion of the trial court whether to award or deny liquidated damages. *See, e.g., Peters v. City of Shreveport,* 818 F. 2d 1148 (5th Cir. 1987), *cert. dismissed,* --- U.S. ---, 99 L.Ed. 2d 264 (1988). Our review of the record reveals no clear abuse of that discretion and, accordingly, we hold that the award of liquidated damages was not error. However, upon remand, the amounts should be adjusted by the court to reflect the recalculation of back wages due to the plaintiffs.

As for the prejudgment interest award, the Jeffersons correctly contend, and the plaintiffs concede that, in a proceeding under the FLSA, a court may not award *both* liquidated damages *and* prejudgment interest. *See, e.g., Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 89 L.Ed. 1296 (1945); *Spagnuolo v. Whirlpool*

*Corp.*, 641 F. 2d 1109 (4th Cir.), *cert. denied*, 454 U.S. 860, 70 L.Ed. 2d 158 (1981). Therefore, the award of prejudgment interest is reversed.

IV

[6] We next address the Jeffersons' claim that the trial court erred by applying a three-year statute of limitations.

Pursuant to 29 U.S.C. Sec. 255(a), the statute of limitations for a cause of action under the FLSA is two years "except that a cause of action arising out of a *willful* violation may be commenced within three years . . . ." Based on a conclusion that the Jeffersons' violations were willful, the trial court extended the limitations period to three years, resulting in the award of an additional year's back wages to plaintiff Ireland, whose suit was instituted by filing of a summons on 31 August 1984.

Although the judgment does not reveal what standard the court used in assessing willfulness, it appears that the court based its ruling upon a finding that the Jeffersons knew the FLSA applied to them and their employees. The Jeffersons contend, and we agree, that the court thereby committed a reversible error of law.

Although at the time this case was tried the federal circuit courts held conflicting views concerning the appropriate test for willfulness for purposes of this statute, the United States Supreme Court recently has resolved the question. In *McLaughlin v. Richland Shoe Co.*, --- U.S. ---, 100 L.Ed. 2d 115 (1988), the court rejected a standard that would require only that the employer be aware of the possible applicability of the FLSA, and held that an employer has not committed a willful violation unless it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at ---, 100 L.Ed. 2d at 123.

Because we conclude that the *Richland Shoe* standard is the appropriate one for determining willfulness, and because we find no evidence in the record that the Jeffersons, during the employment of the plaintiffs, actually knew or showed reckless disregard for whether they were violating the FLSA, we conclude the trial court erred by extending the limitations period to three years. Therefore, that part of the judgment awarding back wages to

plaintiff Ireland for any period prior to 31 August 1982 is reversed.

## V

Finally, contending they were never afforded an opportunity to contest the reasonableness of the amounts awarded, the Jeffersons assign error to the awards of costs and attorney fees. The judgments were entered, by consent of all the parties, out of session and out of the county more than seven months after the trial. The plaintiffs apparently submitted affidavits supporting their claims for attorney fees and costs to the court sometime after trial. The Jeffersons claim they were never served with copies of the affidavits or otherwise given notice of the amounts claimed. Because we are unable to discern from the record whether the Jeffersons did in fact have proper notice of those claims, we direct the trial court on remand to resolve that question, and if appropriate, to afford the Jeffersons an opportunity to voice their objections to the amounts awarded.

## VI

For the foregoing reasons, the judgments appealed from are vacated and this cause is remanded to the trial court for further proceedings consistent with this opinion.

Vacated and remanded.

Judges WELLS and PHILLIPS concur.